**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RADOMIR ZORANOVIC,

Petitioner,

v.

JEFFERSON B. SESSIONS, III, United
States Attorney General,

Respondent.

No. 17-9530
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Radomir Zoranovic, a native and citizen of Bosnia-Herzegovina, seeks review

of the Board of Immigration Appeals' (BIA) decision that affirmed the immigration

judge's (IJ) decision to deny him a waiver and order him removed from the United

States. We deny the petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I.    BACKGROUD

Zoranovic was admitted to the United States as a Serbian refugee in 2002.  He

adjusted his status to that of a lawful permanent resident in 2005.  In 2007, the

Department of Homeland Security (DHS) issued a notice to appear alleging that

Zoranovic should be removed as an inadmissible alien under 8 U.S.C.

§ 1227(a)(1)(A).  According to the DHS, Zoranovic was inadmissible because he

procured entry and adjustment of status by the willful misrepresentation of a material

fact—the failure to disclose his service in the Bosnian Serb army.  *See* 8 U.S.C.

§ 1182(a)(6)(C)(i).  Zoranovic conceded removability, but argued for a waiver or to

readjust his status.

The administrative record discloses the following facts, which are based in

large part on military records and the testimony of an expert witness with deep

knowledge of the Bosnian war, the Bosnian Serb military, and the assault on

Srebrenica.

Zoranovic served in the military twice—first in the Yugoslav army in the early

1980s and then from 1992 to 1996 in the Zvornik Infantry Brigade, 7th Infantry

Battalion, of the Vojska Republika Srpska (VRS), commonly known as the Bosnian

Serb army.  In June 1995, the VRS began planning a military attack on Srebrenica—a

United Nations safe zone established to protect Bosnian Muslim civilians.[1]

---

[1] After Bosnian Muslim forces took control of Srebrenica in 1992, the United
Nations sent its troops to establish a military bunker zone around the city and to
supervise delivery of food and other supplies to the civilian population.

According to the expert, the VRS's "intent [was] to neutralize the [Muslim] enclaves and eliminate conditions for the further existence of the Muslim population in Srebrenica." R., Vol. 1 at 360. To carry out the attack, the VRS established an elite tactical group, which was composed of several hundred of its most physically fit and combat-tested soldiers. Zoranovic was nominated by his battalion leader to serve in the second echelon of the tactical group, which he joined on July 5.

The assault on Srebrenica began on July 6, when the first echelon—the artillery unit—began shelling the city. At the same time, the second echelon—the main infantry division—began attacking the United Nations' outposts on the southern edge of the city, and eventually worked its way to Srebrenica itself. On July 11, the infantry division entered Srebrenica. By the time the infantry entered the city, a large portion of the civilian population had fled north to the village of Potocari. The civilians left behind in Srebrenica were moved into a soccer stadium on the north edge of town.

The infantry division followed the civilians to the southern edge of Potocari, where it established a defensive line to prevent escape and "enforced harsh security measures [to] [e]nsure[] that the expulsion operation of the Bosnian civilian women and children could proceed without friction." *Id*. at 375. While Zoranovic's unit held the defensive line, Serb soldiers segregated the boys and men from ages 15 to 65 from the rest of the population, and either executed them or arranged for them to be moved to other locations and killed. The women and children were loaded onto

buses and trucks and transported to Bosnian government territory. By the evening of July 13, the entire Muslim population had been expelled from Srebrenica.

On July 13, the infantry unit left Srebrenica to undertake an attack on the nearby town of Zepa. On July 16, Zoranovic left the tactical unit and returned to the 7th Battalion, having spent the previous day defending against a group of renegade Muslims who had escaped from Srebrenica. From July 14 to 17, Serb army forces carried out the mass execution of several thousand Muslim men and boys.

Zoranovic's refugee application asked about his military service. He listed his service in the Yugoslav army from 1980 to 1982, but did not mention his service in the VRS. Instead, he stated that he fled to Serbia from Bosnia in May 1992, when the Bosnian war began. And in his later-filed application to adjust his status, Zoranovic again omitted any mention of his service in the VRS.

In 2016, immigration officials discovered that Zoranovic had been a member of the Zvornik Infantry Brigade at the time of the Srebrenica massacre. He was arrested outside of a health center in Utah and agreed to an interview. He admitted that he served in the VRS and was part of the elite infantry unit that moved into Srebrenica in early July 1995. He told immigration officers that when his unit first arrived in Srebrenica, Serb army forces had already invaded the city and the public address system was ordering women to report to the soccer stadium. He said he could see the stadium from the rooftop where he was positioned in uniform and armed with an assault rifle, and watched the women being loaded onto buses.

In a second interview, Zoranovic added more detail. He told investigators that on the day Srebrenica fell to Serb forces, he walked past the soccer stadium and saw "between 1000-3000 individuals assembled on the football pitch. [The] [c]rowd included men (including men of military age), women and children," *id*., Vol. 10 at 3205, and they "were boarding the buses in an urgent manner," *id*. at 3206. He explained that the infantry unit spent the next day or two searching areas around Srebrenica and went to Zepa. He rejoined the 7th Battalion on or about July 16.

At his administrative hearing, Zoranovic provided a different narrative. He admitted that starting on July 6, his tactical unit followed special army forces as they advanced on Srebrenica. He explained that the infantry's job was to create a line of defense by digging trenches behind the advancing forces. Zoranovic said he eventually took up a defensive position in a house outside or on the outskirts of Srebrenica. His unit left on July 12 and moved on to Zepa. He eventually rejoined the 7th Battalion several days later.

Further, Zoranovic denied that he was ever at the soccer stadium or that he saw people inside the stadium: "I have not been anywhere near [Srebrenica]. . . . I [did] not sa[y] I was in [the] city. I did not say I was near [the] city, but I did see the buses later on leaving . . . because the buses were going the same way . . . the army was going." *Id*., Vol. 2 at 460. When confronted by the IJ with the inconsistencies, Zoranovic suggested that he may not have understood the interviewers' questions. Pressed further, Zoranovic flatly denied telling immigration officers that he was present at the stadium and armed with an assault rifle.

5

Speaking about his military service generally, Zoranovic denied that he ever saw combat while serving in the 7th Battalion, or that he was involved in killing or capturing prisoners during the assault on Srebrenica. He also denied any knowledge of the plan to eliminate Bosnian Muslim civilians at Srebrenica, and claimed that he first learned of the mass executions in late July.

He told the IJ that he lied about his military service in his refugee application because he feared he would be denied asylum if it was disclosed. Zoranovic also testified that he was aware of reports that he could not gain entry to the United States unless he was a resident of Serbia, so he falsely claimed that he lived there beginning in 1992. Last, he recanted another false story that he told immigration officials when he first entered the United States about having been beaten by Bosnian Muslim soldiers.

The DHS's expert witness testified that Zoranovic's presence at or near the soccer stadium, including his observation of women were being loaded onto buses, made him a party to genocide or extrajudicial killings. The expert also cast doubt on Zoranovic's testimony that he: (1) never saw combat in the Bosnian war because the 7th Battalion was routinely deployed to combat zones and he was selected for the elite infantry unit for the assault on Srebrenica; (2) was unaware of any civilian deaths while in or near Srebrenica because there were many fatalities in the initial shelling; and (3) did not know about the mass executions until the end of July, because the attack was broadcasted by Serb leaders, was a common topic of

discussion among Bosnian Serb military personnel, and he would have passed mass graves on his return to the 7th Battalion on or about July 16.

The IJ credited the expert testimony and Zoranovic's interview statements—not his hearing testimony. He denied relief because Zoranovic failed to prove by a preponderance of the evidence that he did not assist in the genocide or extrajudicial killing of civilians at Srebrenica. Thus, under § 1182(i)(1), the IJ found Zoranovic ineligible for a waiver. The IJ further found that even if Zoranovic was eligible to adjust his status under § 1182(i)(1), he failed to establish extreme hardship to his United States citizen wife if he was deported. The BIA affirmed.[2]

## II. STANDARD OF REVIEW

The BIA issued a three-member panel explanatory decision that also specifically adopted and affirmed the IJ's decision. Zoranovic argues that even though the BIA decision adopted and affirmed the IJ's decision, our review is limited exclusively to the BIA's decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006) ("[When] the BIA . . . conduct[s] a three-member panel review, which requires the issuance of a full explanatory opinion[,] . . . the BIA opinion completely supercedes the IJ decision for purposes of our review.").

---

[2] In his appeal to the BIA, Zoranovic pressed the argument that he was entitled to adjust his status under § 1182(i)(1). He has abandoned that argument, however, in apparent recognition of the fact that "[n]o court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under [§ 1182(i)(1)]." § 1182(i)(2).

7

We have not specifically addressed whether the scope of our review under these circumstances properly includes the IJ's decision. But we need not decide the issue because the BIA's decision fully addresses the grounds relied on by the IJ.

"We consider any legal questions de novo, and we review the agency's findings of fact under the substantial evidence standard. Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). The substantial evidence standard is "highly deferential." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004). In reviewing the agency's factual findings, we do not determine how we would decide the issue de novo or whether any reasonable factfinder could find for Zoranovic. Instead, under the deferential substantial evidence standard, we must affirm the agency's factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Uanreroro*, 443 F.3d at 1204 (internal quotation marks omitted).

Our review is further limited to issues that have been administratively exhausted. See 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available . . . as of right."); *see also Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("To satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court."). There is a narrow exception to this

rule where the BIA sua sponte considers arguments not advanced by the alien. But the exception applies only where the BIA has

> (1) clearly identif[ed] a claim, issue, or argument not presented by the petitioner; (2) exercise[d] its discretion to entertain that matter; and (3) explicitly decide[d] that matter in a full explanatory opinion or substantive discussion. Only then may a petitioner take an argument to court that he never pursued before the BIA.

*Garcia-Carbajal*, 625 F.3d at 1235.

## III.   ANALYSIS

Zoranovic concedes the failure to disclose his VRS military service was a material misrepresentation that made him inadmissible for entry. *See* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . admission into the United States or other [immigration] benefit . . . is inadmissible.").[3] But he contends that he was entitled to a waiver of inadmissibility under § 1227(a)(1)(H).

Although a waiver is available under certain circumstances, the agency cannot grant a waiver to an alien who has participated in genocide or extrajudicial killings. *See id*. ("The provisions . . . relating to the removal of aliens . . . on the ground that they were inadmissible at the time of admission as aliens described in section 1182(a)(6)(C)(i) . . . may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in paragraph (4)(D)," which specifies

---

[3] As an inadmissible alien, Zoranovic was subject to removal under 8 U.S.C. § 1227(a)(1)(A).

9

genocide and extrajudicial killings).  Genocide and extrajudicial killings are defined under § 1182(a)(3)(E)(ii), (iii), to include "[a]ny alien who ordered, incited, assisted, or otherwise participated in" these activities.  Zoranovic bears the burden to show by a preponderance of the evidence that he was not inadmissible (i.e., that he was not involved in genocide or extrajudicial killings).  *See* 8 C.F.R. § 1240.8(d) ("[T]he alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.").

According to Zoranovic, he met this burden because this court "must accept [his] testimony as true because neither the IJ nor the BIA made an express determination that he was not credible."  Pet'r's Opening Br. at 17.  As authority, he cites 8 U.S.C. § 1229a(c)(4)(C), which provides "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal."  Putting a slightly finer point on the issue, Zoranovic explains that because the IJ did not make an explicit credibility determination, "on appeal before the BIA, there was a rebuttable presumption . . . that [he] testified credibly in Immigration Court," and because "the BIA did not make an explicit determination that [his] presumption of credibility had been rebutted," this court must "accept [his] testimony as true."  Pet'r's Opening Br. at 17-18.

The problem for Zoranovic is that he did not raise the IJ's alleged failure to make an explicit credibility determination in his appeal to the BIA, nor did the BIA sua sponte consider the issue.  As such, we lack jurisdiction to consider this argument.  *See Garcia-Carbajal*, 625 F.3d at 1235, 1237*; see also Soberanes v.*

10

*Comfort,* 388 F.3d 1305, 1308-09 (10th Cir. 2004) ("Neglecting to [raise an issue with] the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised, negating the jurisdiction necessary for subsequent judicial review.").[4]

Zoranovic further argues that even if this court is not compelled to accept his testimony as true, the BIA's decision is not supported by substantial evidence. In particular, he argues that he has an "airtight alibi" because the expert testified that he was not in Srebrencia when the executions took place. Pet'r's Opening Br. at 21, 32. But the issue is not whether Zoranovic actually pulled the trigger. Instead, the question is whether substantial evidence supports the BIA's finding that he "incited, assisted, or otherwise participated in" genocide or extrajudicial killings. *See* § 1182(a)(3)(E)(ii), (iii).

The BIA explained that "the terms used in the statute are given broad interpretation and 'do not require direct personal involvement in the acts of persecution.'" R., Vol. 1 at 5 (quoting *Matter of D-R-*, 25 I. & N. Dec. 445 (BIA 2011)). Instead, "[t]he [IJ] is permitted to make reasonable inferences among the plausible possibilities and explanations for discrepancies in the record and he did so." *Id.*

_____

[4] Zoranovic further argues that he cannot be denied waiver under § 1182(a)(3)(E)(iii), because "the so-called Republika Srpska is not and has never been a foreign nation." Pet'r's Opening Br. at 25. But Zoranovic did not raise this issue with the BIA, nor did the BIA sua sponte consider it. As such, we lack jurisdiction to consider the argument. *See Garcia-Carbajal,* 625 F.3d at 1235, 1237.

Among other things, the BIA noted Zoranovic's membership in the elite tactical group, his first-hand participation in maintaining a defensive line outside Srebrencia, and his admissions that he was at the soccer stadium, armed and in uniform, when he saw women being loaded onto buses. As such, the BIA found that he failed to "provide[] sufficient evidence that he did not assist or participate in [genocide or extrajudicial killings]." *Id.* Under the deferential substantial evidence standard, we must affirm the BIA's finding because no reasonable adjudicator would be compelled to conclude otherwise.

The petition for review is denied.

Entered for the Court


Bobby R. Baldock
Circuit Judge