**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

HARPREET SINGH,

     Petitioner,

v.

MATTHEW G. WHITAKER, Acting
United States Attorney General,[*]

     Respondent.

No. 18-9518
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]

_____

Before **LUCERO**, **KELLY**, and **PHILLIPS**, Circuit Judges.

_____

Harpreet Singh petitions this court for review of the Board of Immigration

Appeals' ("BIA") panel decision denying his application for asylum, withholding of

---

[*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Matthew G. Whitaker is substituted for Jefferson B. Sessions, III, as the
respondent in this action.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal, and relief under the Convention Against Torture. Exercising jurisdiction under 28 U.S.C. § 1252(a), we deny Singh's petition.

**I**

Singh is a native and citizen of India who illegally entered the United States without valid immigration papers on or about February 10, 2017. He applied for asylum, withholding of removal, and relief under the Convention Against Torture on the basis that he feared returning to India. He claimed his membership in a Sikh political party, the Mann Party, placed him in danger from the rival Sikh political group, the Badal Party. Singh alleged that members of the Badal Party attacked him on two occasions.

On April 6, 2017, the Department of Homeland Security issued Singh a Notice to Appear ("NTA") charging him with removability. Singh appeared before the immigration judge ("IJ") for the first time on June 20, 2017, at a scheduled master calendar hearing. Singh sought a continuance of his merits hearing so he could obtain counsel. The IJ granted him a continuance to July 5, 2017. On July 5, Singh told the IJ his uncle was in contact with an attorney and he needed another week. The IJ granted a second continuance to July 19, 2017, but warned Singh that if he did not have an attorney by that date he would be required to represent himself. Singh stated that he understood.

On July 19, Singh told the IJ he had retained counsel, but requested a third continuance. Counsel was not present at the hearing. Singh admitted to the factual allegations in the NTA. He also filed his I-589 form to apply for asylum,

2

withholding of removal, and protection under the Convention Against Torture. The IJ granted Singh a third continuance to August 16, 2017. On August 16, Singh again appeared without counsel and asked for more time. The IJ denied further continuances because Singh had two months to obtain counsel, and set the merits hearing for August 30, 2017. The IJ informed Singh that all of his supporting documents needed to be submitted to the court before the hearing.

At the August 30 hearing, Singh said his uncle had found an attorney—Shiv Kapoor with an office in San Antonio, Texas—to represent him. Singh told the IJ he had been unable to contact Kapoor for the last fifteen days because of bad weather, an apparent reference to Hurricane Harvey, which had recently made landfall in Houston, Texas. Singh asked for a one-month continuance. The IJ took judicial notice that San Antonio had not been impacted by Hurricane Harvey, and attempted to call Kapoor's office, but the call went to voice mail. The IJ denied the continuance and proceeded to take Singh's testimony.

Singh testified he was first attacked by Badal Party members when he was hanging Mann Party posters by a roadside. He said after a vehicle with Badal Party posters approached him, four men in yellow turbans came out, attacked him, and told him to leave the Mann Party. The IJ asked if he had been hospitalized for his injuries. Singh answered affirmatively, but when the IJ asked if he had any supporting documentation, Singh changed his answer and said he received treatment from a village doctor but had no evidence. Later in the hearing, when the IJ asked why he could not safely return to India, Singh stated for the first time that his

3

attackers took his personal identification information and could find and attack him anywhere in India.

Singh testified the second attack happened when he was riding his motorcycle. He said a car stopped next to his motorcycle, someone got ahold of the motorcycle handle, he swerved, and the car hit his motorcycle. He said he fell and people came and started hitting him with hockey sticks, breaking his ankle. Singh stated the attackers threatened to kill him unless he left the Mann Party. He testified he was hospitalized for his broken ankle and wore a cast. Although Singh did not provide any documentation supporting the hospitalization, Singh stated he could get the documents from his family in India if the IJ granted another continuance. The IJ asked why he had not obtained this documentation during the preceding months, noting that Singh's father had previously submitted other documents on Singh's behalf. Singh stated there was trouble in India.

The IJ found that Singh did not testify credibly. In a detailed decision, the IJ noted numerous vague answers, inconsistencies, and omissions in Singh's testimony. The IJ noted that Singh gave nonresponsive answers and had to be asked repeatedly to answer certain questions. The IJ acknowledged that some inconsistencies were minor, but noted that Singh often omitted key events. Considered cumulatively, the IJ found Singh's asylum application was not credible and that he had not met his burden to establish eligibility for asylum. Because the burden of proof to establish withholding of removal or relief under the Convention Against Torture is higher, the IJ likewise denied relief under those provisions.

4

The BIA panel concluded the IJ's denial of Singh's request for a fourth continuance did not deny him a fundamentally fair hearing. It also concluded the IJ's credibility determination was not clearly erroneous. The BIA thus affirmed the IJ's decision. Singh timely appealed.

## II

Singh argues he was denied his right to a fundamentally fair hearing because the IJ denied him a continuance to obtain counsel and the IJ's adverse credibility determination was not supported by substantial evidence.[1] We have jurisdiction to review legitimate constitutional claims. 8 U.S.C. § 1252(a)(2)(D).

If a three-member panel of the BIA issues a decision, as in this case, "the BIA opinion completely supersedes the IJ opinion for purposes of our review." Uanreroro v. Gonzales, 443 F.3d 1197, 1203 (10th Cir. 2006). But we may consult the IJ's decision if it provides a "more complete explanation" of the BIA panel's condensed description of the IJ's credibility findings. Id. at 1204.

"On an asylum claim, we review the BIA's findings of fact under a substantial-evidence standard," in which "the BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." Rodas-Orellana v. Holder, 780 F.3d 982, 990 (10th Cir. 2015)

---

[1] Singh also argues for the first time on appeal that the IJ violated his due process rights by denying his request at the hearing for additional time to provide documentary evidence. We lack jurisdiction to review this claim because Singh did not exhaust it before the BIA. See Garcia-Carbajal v. Holder, 625 F.3d 1233, 1236-38 (10th Cir. 2010).

(quotation omitted). "We review the BIA's legal decisions de novo . . . ." Id. (quotation omitted). "The BIA's determination that an applicant was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole . . . ." Id. (quotation omitted).

"Credibility determinations are factual findings . . . subject to the substantial evidence test." Uanreroro, 443 F.3d at 1204. "There is no presumption of credibility." 8 U.S.C. §1158(b)(1)(B)(iii). In making credibility determinations, the trier of fact should consider "the totality of the circumstances, and all relevant factors," which include the "demeanor, candor, or responsiveness of the applicant," "the consistency between the applicant's . . . written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record." Id. Inconsistencies do not have to go to the heart of the applicant's claim, or to any relevant factor. Id. "Because an alien's testimony alone may support an application for withholding of removal or asylum, the IJ must give specific, cogent reasons for disbelieving it." Sviridov v. Ashcroft, 358 F.3d 722, 727 (10th Cir. 2004) (quotation omitted).

"Because aliens do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." Arambula-Medina v. Holder, 572 F.3d 824, 828 (10th Cir. 2009) (quotation omitted). To establish a due process violation based on an alleged defect in a removal hearing, an alien must show that the lack of representation caused

6

prejudice that "implicates the fundamental fairness of the proceeding." Michelson v. INS, 897 F.2d 465, 468 (10th Cir. 1990). "To prevail on a due process claim, an alien must establish not only error, but prejudice." Alzainati v. Holder, 568 F.3d 844, 851 (10th Cir. 2009).

We conclude the IJ did not violate Singh's due process rights by refusing to continue his case for a fourth time after giving him two months to find counsel. The IJ complied with regulatory requirements by advising Singh of his right to obtain counsel and providing him with a list of free or reduced-cost legal services that were available to him, and by granting him several continuances to obtain an attorney and the documents he felt were relevant to his claims for relief. See 8 C.F.R. § 1240.10(a). The IJ cautioned Singh multiple times that if he did not obtain counsel, he would have to represent himself. And there is no Sixth Amendment right to counsel in removal proceedings. United States v. Rangel de Aguilar, 308 F.3d 1134, 1138 (10th Cir. 2002). Singh was able to obtain counsel for his bond hearing. He never explained his failure to obtain counsel for his merits hearing, other than a vague and unsupported assertion that bad weather prevented him from contacting an attorney. Singh's own failure to obtain counsel does not call into question the fundamental fairness of his removal proceedings.

We also conclude that the BIA's credibility findings are supported by substantial evidence. Singh challenges the BIA's example that he failed to disclose that his first attackers took his identification papers. In his credible-fear interview, Singh did not say that the first attackers took his identification papers, nor did he

mention this when describing the attack during direct testimony at his merits hearing. Not until later, when the IJ asked why he could not return to another part of India, did Singh say that his attackers rummaged through his pockets and took his identification papers. The BIA noted this as an omission. Singh argues this is not supported by the record because he stated during his credible-fear interview that the Badal Party had his "id card" and could find him. The BIA accurately stated, however, that Singh omitted the detail that the attackers rummaged through his pockets and took his papers when he described the attack. The BIA's characterization of Singh's omission is supported by the record.[2]

Singh asserts he did not give vague answers to the IJ's questions about how many members were in the Mann Party and whether he worked for the Mann Party year-round. We disagree. The BIA's characterization of Singh's responses to these questions as vague and non-responsive is supported by the record. Singh also argues his accounts of the second attack at the merits and credible-fear hearings were consistent. But we conclude the BIA's characterization of his differing versions as inconsistent is supported by the record, which shows Singh provided two conflicting accounts of the way in which his attackers separated him from his motorcycle.

A reasonable adjudicator would not be compelled to find Singh credible because the multiple inconsistencies and vague or nonresponsive answers identified

---

[2] Singh challenges several other examples the IJ gave of his inconsistent, vague, or nonresponsive answers. But we need only address Singh's challenges to the examples given by the BIA, because the BIA's decision supersedes the IJ's decision. Uanreroro, 443 F.3d at 1203.

by the BIA are supported by the record.  As such, we will not reverse the BIA's credibility determination.  See Htun v. Lynch, 818 F.3d 1111, 1119 (10th Cir. 2016) (holding we can reverse the BIA's findings of fact under the asylum substantial-evidence test only if "any reasonable adjudicator would be compelled to conclude to the contrary" (quotation omitted)).

## III

Petition **DENIED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge