**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 8, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

IVIS N. VAZQUEZ; BLANCA
MARLENE GUTIERREZ-DE VASQUEZ;
H. VASQUEZ-GUTIERREZ; E.
VASQUEZ-GUTIERREZ,

      Petitioners,

v.

MERRICK B. GARLAND, United States
Attorney General,

      Respondent.

No. 20-9641
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Ivis N. Vazquez, his wife, and his two children, are natives and citizens of El

Salvador who entered the United States without permission.  An immigration judge

(IJ) found them removable and ineligible for asylum, withholding of removal, and

protection under the Convention Against Torture (CAT).  The Board of Immigration

Appeals (BIA) affirmed in a single-member summary disposition.  Vazquez and his

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

family now petition for review of that decision.  We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.

## I.     STANDARD OF REVIEW

We review the BIA's decision, but we may consult the IJ's more-complete discussion of the same grounds relied upon by the BIA.  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  "[W]e will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance."  *Id.* "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

## II.     BACKGROUND & PROCEDURAL HISTORY

Vazquez and his family entered the United States in July 2016 by crossing the Rio Grande near Hidalgo, Texas.  They soon applied for asylum, withholding of removal, and CAT protection.  Vazquez's wife and children applied as derivative beneficiaries of Vazquez himself.  We therefore do not separately discuss their eligibility for relief.

As an asylum applicant, Vazquez must establish he suffered or reasonably fears suffering persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  At his asylum hearing, the IJ asked, "[W]hat are the particular social groups . . . in this case?"  R. at 129.  Vazquez's attorney responded by identifying a "political [sic] social group" described as "victims of threats from . . . MS gang members in El Salvador."  *Id.*  Vazquez then testified that the MS gang took over his neighborhood

2

in El Salvador, leading to three confrontations that motivated him to flee the country and seek asylum in the United States.

The first encounter was in February 2016, when a gang member displayed a firearm in his waistband and told Vazquez he must drive with his headlights off at night, to distinguish him from non-residents of the neighborhood. Vazquez responded that he "didn't want to." *Id.* at 135. Vazquez's attorney asked, "Why did you tell [the gang member] that?" *Id.* Vazquez answered, "Because I don't agree with regulations that aren't normal in a society." *Id.*

The second encounter was in May 2016, when MS gang members stopped him at night while he was driving with his headlights on, brandished firearms, and threatened to kill Vazquez and his family if he did not follow their rule. Vazquez's wife reported this incident to a national police agency (not local police, fearing them incompetent or corrupt).

The third and final encounter was in June 2016, while Vazquez was walking in his neighborhood. An MS gang member approached him, accused him of not following orders, and threatened that he or a family member would be killed if he was seen in the area again. So he and his family fled to the United States.

Vazquez's wife also testified at the hearing. Her testimony was consistent with her husband's, except she had no personal knowledge of the third encounter because she had not been there.

At the conclusion of the hearing, the IJ found Vazquez and his wife credible. The IJ ruled, however, that the threats and harassment to which they testified did not

qualify as "persecution" under the statutes and regulations governing asylum. Alternatively, the IJ found: (i) "victims of threats from MS gang members in El Salvador," *id.* at 3 (internal quotation marks omitted), is not a particular social group because it is circular, and is otherwise not socially distinct; (ii) to the extent Vazquez asserted persecution on account of political opinion (*e.g.*, his opposition to "regulations that aren't normal in a society," *id.* at 135), he had not established that the MS gang was threatening him because of that opinion; and (iii) Vazquez had failed to establish that the Salvadoran government is unable or unwilling to control criminal gangs.

Recognizing that one can seek asylum "because of [past] persecution or a well-founded fear of [future] persecution," 8 U.S.C. § 1101(a)(42)(A), the IJ then addressed the possibility of future persecution. On this question, the IJ found against Vazquez for some of the same reasons already explained, namely, inability "to show a viable particular social group" and inability "to show that they [*i.e.*, Vazquez and his wife] hold a political opinion or a political opinion [that] was imputed to them, or that they . . . would be harmed in the future on account of an imputed political opinion or a political opinion." R. at 82–83.[1]

For all these reasons, the IJ denied asylum. And because withholding of removal requires an even stricter standard of proof, the IJ likewise denied withholding.

---

[1] The IJ added that the claim of future persecution failed because Vazquez had not shown that relocating within El Salvador was infeasible. But the BIA did not mention this part of the IJ's reasoning in its decision, so we do not consider it.

Finally, the IJ denied CAT protection because "[t]here is simply insufficient evidence in the record that the respondents will likely be tortured in their country by or at the instigation of or with the consent or acquiescence of a public official or person acting in an official capacity." *Id.* at 83.

Vazquez appealed to the BIA, which adopted the IJ's reasoning on all issues, with one modification. Regarding the Salvadoran government's ability or willingness to control the MS gang, the BIA held that Vazquez had not "meaningfully challenge[d]" the IJ's disposition, so the BIA "deem[ed] the issue waived." *Id.* at 4. But the BIA further stated that it "would affirm" the IJ's disposition for the reasons stated by the IJ, if it were to reach the merits. *Id.*

Vazquez then timely petitioned this court for review.

## III.  ANALYSIS

Vazquez argues that he qualifies for asylum under particular-social-group and political-opinion theories, and that he otherwise qualifies for CAT protection. We address these arguments in turn.[2]

### A.    Asylum

#### 1.    "Particular Social Group"

##### a.    *Vazquez's Original PSG*

We first examine the BIA's conclusion that "victims of threats from MS gang members in El Salvador" is not a valid particular social group (PSG). *Id.* at 3

---

[2] Vazquez offers no argument specific to withholding of removal, so we presume he concedes the BIA's conclusion that failure to qualify for asylum means he likewise fails to qualify for withholding.

(internal quotation marks omitted). If this conclusion is supportable, we need not examine the BIA's other reasons for denying Vazquez's PSG-based asylum claim. *See Zzyym v. Pompeo*, 958 F.3d 1014, 1033–34 (10th Cir. 2020) ("[W]e can uphold administrative action when an agency gives two independent reasons and only one of them is valid.").

The Immigration & Nationality Act (INA) does not define "particular social group," so the BIA has developed its meaning through case law. *See, e.g.*, *Matter of Acosta*, 19 I. & N. Dec. 211, 232–34 (BIA 1985). Especially relevant here, the BIA says that "[p]ersecutory conduct aimed at a social group cannot alone define the group, which must exist independently of the persecution." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 215 (BIA 2014). The BIA cited *W-G-R-* when upholding the IJ's conclusion that Vazquez's proposed PSG is "impermissibly circularly defined by the fact that its members have been subjected to harm." R. at 3 (internal quotation marks omitted).

Vazquez faults the BIA for also citing a different decision, *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018). There, then-Attorney General Sessions held that the BIA should not have endorsed "married women in Guatemala who are unable to leave their relationship" as a cognizable PSG, *id.* at 319 (internal quotation marks omitted), because "[g]enerally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum," *id.* at 320. Vazquez says that *A-B-* is undeserving of deference and the BIA should not have followed it.

6

Shortly after briefing concluded in this appeal, current Attorney General Garland vacated *A-B-* (which he denominated "*A-B- I*") in anticipation of formal rulemaking to define "particular social group." *See Matter of A-B-*, 28 I. & N. Dec. 307, 308 (A.G. 2021). He further instructed the immigration courts to "follow pre-*A-B- I* precedent" until that rule is promulgated. *Id.* at 309.

*A-B- I*'s vacatur does not affect the outcome here. "Pre-*A-B- I* precedent" includes *W-G-R-*, and *W-G-R-* establishes that "[p]ersecutory conduct aimed at a social group cannot alone define the group, which must exist independently of the persecution." 26 I. & N. Dec. at 215. The BIA clearly had this in mind—and not *A-B- I*'s general presumption against private-violence-based PSG claims—when it ruled that Vazquez's proposed PSG was "impermissibly circularly defined by the fact that its members have been subjected to harm." R. at 3.

Vazquez does not argue that *W-G-R-* was wrongly decided or undeserving of deference. And we frankly cannot see how this part of *W-G-R-* could be incorrect. The statute requires persecution "on account of" the protected characteristic, such as "membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A). No one can be a member of a persecution-defined PSG until they suffer persecution, yet they cannot suffer persecution "on account of" their membership in that PSG until they have been persecuted. So a persecution-defined PSG makes nonsense of the statute.[3]

---

[3] In a similar vein, the IJ said, "Respondents also suffer a nexus problem, which is essentially the issue with the circular definition. They cannot show that they were threatened on account of being threatened, or are victims of threats on account of being victims of threats." R. at 94. Vazquez claims this "intentionally

We therefore find Vazquez's argument regarding *A-B- I* irrelevant.

Finally, Vazquez accuses the IJ of failing to "seek[] clarification [regarding his PSG], as required by *Matter of W-Y-C- & H-O-B-*[, 27 I. & N. Dec. 189, 191 (BIA 2018)]." Pet'r Opening Br. at 34. *W-Y-C-* says, "If an applicant is not clear as to the exact delineation of the proposed social group, the Immigration Judge should seek clarification . . . ." 27 I. & N. Dec. at 191. Vazquez interprets this as a requirement that the IJ prod the asylum applicant until he states a cognizable PSG, before taking testimony.

We disagree with Vazquez's interpretation of *W-Y-C-*. The applicant in that case claimed "a social group comprised of '[s]ingle Honduran women age 14 to 30 who are victims of sexual abuse within the family and who cannot turn to the government.'" *Id.* at 189. This was the PSG the applicant claimed *after* the IJ had sought clarification. *See id.* at 191 ("If an applicant is not clear as to the exact delineation of the proposed social group, the Immigration Judge should seek clarification, *as was done in this case*." (emphasis added)). The IJ went on to find that this was not a cognizable PSG. *Id.* at 189–90. On appeal, the applicant conceded she had not stated a valid PSG and asked the BIA to consider a new PSG, "namely, 'Honduran women and girls who cannot sever family ties.'" *Id.* at 190. So the BIA asked whether it could consider a PSG articulated for the first time on

misconstrues [his] testimony" because he "never stated that he was threatened for being threatened or feared threats because he had suffered threats." Pet'r Opening Br. at 27. But the IJ was not commenting on Vazquez's testimony. He was merely explaining from a different angle why the statute cannot embrace Vazquez's proposed PSG.

appeal.  The answer in that case was no because the new PSG was "substantially different from the one delineated below," meaning the IJ "did not have the opportunity to make the underlying findings of fact that are necessary to [the BIA's] analysis of the [applicant's] eligibility for asylum."  *Id.* at 192.

Given this context, we understand the BIA's "seek clarification" instruction as part of its emphasis on developing a factual record tied to a specific PSG, in turn emphasizing why the BIA generally cannot consider new PSGs on appeal.  *See id.* at 191.  Nothing in *W-Y-C-* suggests the IJ must ask clarifying questions until the applicant states a cognizable PSG.

In short, we see no error in the BIA's conclusion that the INA cannot accommodate "victims of threats from MS gang members in El Salvador" as a PSG. R. at 3 (internal quotation marks omitted).  We also see no procedural error in the agency's handling of this claim.  We affirm the BIA's denial of asylum based on this proposed PSG, and we need not reach any of the BIA's alternative conclusions leading to the same result.

b.      *Vazquez's Alternate PSG on Appeal to the BIA*

Vazquez says his "prior attorney articulated a new PSG [on appeal to the BIA], based on the same set of facts established before the IJ: individuals in El Salvador who report gang activities to the authorities.  The [BIA] did not acknowledge this PSG at any point in its decision."  Pet'r Opening Br. at 34 (citation omitted).  We presume Vazquez intends to sidestep *W-Y-C-* with the qualifier, "based on the same set of facts."  Regardless, we disagree that Vazquez presented a new PSG to the BIA.

9

The only PSG Vazquez explicitly identified in his BIA briefing is the same one already addressed above. *See* R. at 17 ("Respondent is a member of the particular social group comprised of 'victims of threats from MS 18 Gang Members in El Salvador' . . . ."). In the middle of arguing for asylum under that proposed PSG, Vazquez included several non sequitur assertions that seem copied from a different brief, *e.g.*, "Respondent's social group is composed of members who share the common immutable characteristic[s] of gender, nationality, and intimate relationship." *Id.* at 18. Some of those non sequitur assertions involve violence against those who report gang activity, *e.g.*, "There is substantial evidence that gangs whom [sic] control the area were motivated to harm [Vazquez] because [he] reported their activities to authorities." *Id.* But we cannot fault the BIA for failing to interpret this as a new proposed PSG. Vazquez never identified it as such and never asked the BIA to consider it in the alternative to his existing theory. Nor did he cite evidence supporting the claim that the MS gang knew he had reported anything to the authorities.[4]

In this light, we need not examine whether the BIA could have entertained a new PSG theory on appeal. We hold instead that Vazquez did not fairly present this theory to the BIA. He therefore did not exhaust it, so we lack jurisdiction to consider it. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of

---

[4] Vazquez's testimony was that he did *not* report anything to the authorities, because he believed it would be futile. His wife made a report, but there is still no evidence that the MS gang knew as much.

10

right . . . ."); *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("To satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court.").

### 2.     Political Opinion

Vazquez also challenges the agency's conclusion that he does not qualify for asylum based on political opinion.  He claims the opinion in question is his opposition to "regulations that aren't normal in a society," such as the gang's insistence that he drive with his lights off at night.  R. at 135.  He particularly focuses on the IJ's finding that "[t]he gang is targeting the respondents and their family because they view them as a threat to their continued stranglehold on the neighborhood and that they are opposing their authority.  The Court cannot find that this qualifies under a political opinion rubric . . . ."  *Id.* at 81.  Vazquez says "[i]t defies any reasonable explanation why these facts do not establish a nexus between the feared harm and [his] articulated political opinion."  Pet'r Opening Br. at 39.

An alleged persecutor's motivation is "a classic factual question."  *Crespin-Valladares v. Holder*, 632 F.3d 117, 128 (4th Cir. 2011).  We cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary" on this issue.  8 U.S.C. § 1252(b)(4)(B).  To begin, there is no evidence that Vazquez expressed his political opinion to the gang members.  Even if he did, the evidence does not compel the conclusion that the gang continued to threaten him because it wanted to suppress his general philosophical opposition to abnormal regulations.  Rather, the last gang

member to threaten him—the threat that motivated Vazquez to flee—said only that

Vazquez "didn't follow [the gang's] orders." R. at 140–41.

We therefore reject Vazquez's argument that the agency erred when analyzing

his asylum claim based on political opinion.

## B. CAT Protection

Even if Vazquez does not qualify for asylum, he may still qualify for CAT

protection if he "is more likely than not to be tortured" upon return to El Salvador.

8 C.F.R. § 1208.17(a). But such torture must be "inflicted by, or at the instigation of,

or with the consent or acquiescence of, a public official acting in an official

capacity." *Id.* § 1208.18(a)(1).

The IJ denied CAT protection because "[t]here is simply insufficient evidence

in the record that the respondents will likely be tortured in their country by or at the

instigation of or with the consent or acquiescence of a public official or person acting

in an official capacity." R. at 83. This portion of the IJ's decision contains no

discussion of the evidence and the BIA affirmed without elaboration. Vazquez

argues that the agency erred by merely announcing its conclusion, rather than

providing discussion.

"We may not supply a reasoned basis for the agency's action that the agency

itself has not given. We will, however, uphold a decision of less than ideal clarity if

the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S.,*

*Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation

marks and citation omitted). Here, we can reasonably discern that the IJ had in mind

12

the asylum-related analysis he had just given when he ruled on the CAT question. In particular, the immediately preceding pages of his opinion address whether the Salvadoran government is unable or unwilling to control criminal gangs. *See* R. at 81–82. This is functionally the same question as whether the Salvadoran government consents to or acquiesces in torture committed by those gangs. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1125–26 (10th Cir. 2007) (equating the two inquiries). Vazquez understands as much because the portion of his brief regarding consent and acquiescence refers us back to his discussion of inability or unwillingness. *Compare* Pet'r Opening Br. at 42 (in the asylum context, asserting that "[t]he IJ's factual findings in this case clearly indicated that El Salvador is wholly unable to protect its citizens from gang violence"), *with id.* at 44 (in the CAT context, asserting that "he established the government of El Salvador turns a blind eye to harm perpetrated by the MS gang against the citizens of El Salvador, as discussed above").

The BIA held that Vazquez waived his challenge to the IJ's findings regarding the Salvadoran government's ability and willingness to control criminal gangs. From our perspective, this is a question of administrative exhaustion. *See Soberanes v. Comfort*, 388 F.3d 1305, 1308–09 (10th Cir. 2004) ("Neglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised, negating the jurisdiction necessary for subsequent judicial review.").

We have reviewed Vazquez's BIA appeal brief.  The only passage approaching the ability/willingness question is a single sentence, without accompanying citations, in the section on withholding of removal (not CAT protection): "The MS [gang] is a quasi-governmental group since they are operating unchecked in El Salvador by the [Salvadoran] officials."  R. at 20.  We concur with the BIA that this sentence does not "meaningfully challenge" the IJ's disposition of this issue.  *Id.* at 4.  Finally, we note that the CAT section of Vazquez's BIA appeal brief does not discuss consent or acquiescence beyond quoting the regulatory definition of "acquiescence."  *Id.* at 20. We therefore lack jurisdiction to review Vazquez's claim that the agency should have ruled in his favor on this issue.

## IV.    CONCLUSION

We deny the petition for review.

Entered for the Court

Timothy M. Tymkovich
Chief Judge
