# United States Court of Appeals
## For the First Circuit

No. 15-2095

VERONICA CARMELA CORTEZ CARDONA,
a/k/a VERONICA DEL CARMEN CORTEZ,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Thompson, Selya, and Lipez,
<u>Circuit Judges</u>.

<u>Hans J. Bremer</u> and <u>Bremer Law & Associates, LLC</u> on brief for petitioner.
<u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, U.S. Department of Justice, Civil Division; <u>Anthony Nicastro</u>, Acting Assistant Director, Office of Immigration Litigation; and <u>Joanna L. Watson</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

February 17, 2017

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), U.S. Attorney General Jefferson B. Sessions, III, has been substituted for U.S. Attorney General Loretta E. Lynch as respondent.

**LIPEZ**, **Circuit Judge**.  The petitioner, Veronica Carmela Cortez Cardona ("Cortez"), a native and citizen of Guatemala, seeks review of a decision from the Board of Immigration Appeals ("BIA" or "Board") denying her motion to reopen an appeal challenging an immigration judge's ("IJ") decision to reject her request for asylum and withholding of removal pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3).  Under the deferential standard of review accorded to the BIA's decision to reject a motion to reopen and reconsider its own proceedings, we deny her petition.

## I.

Cortez arrived in the United States without proper entry documentation on April 17, 2013.  During the following month, the Department of Homeland Security served her with a Notice to Appear ("NTA") before an IJ, alleging that she failed to possess a valid travel document at her time of entry into the United States in violation of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I).

In a July 2013 written pleading, Cortez admitted the factual allegations and the removal charge alleged in her NTA and filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  Cortez's asylum application recounted an emotionally, physically, and sexually abusive relationship with a man whom she had dated in Guatemala named Juan Carlos.  She testified before the IJ that her

- 2 -

relationship with Juan Carlos went well for a few months after they first began dating, but eventually Juan Carlos introduced Cortez to his many friends who were gang members and attempted to recruit her into his gang. After rebuffing these efforts, her relationship with Juan Carlos quickly crumbled, and he became abusive. In order to escape Juan Carlos's physical and sexual violence, she made arrangements to travel to the United States. Cortez asserted before the IJ -- and continues to maintain here -- that she is eligible for asylum based upon a fear of persecution due to her "membership in a particular social group." 8 U.S.C. § 1158(b)(1)(B)(i). She proposed two potential social groups in her hearing before the IJ -- "Guatemalan women who have been involved intimately with Guatemalan male companions who believe that women are to live under male domination" and "women in domestic relationships who are unable to leave."[1]

Providing three reasons for his decision rejecting her application for relief, the IJ first cited inconsistencies between Cortez's testimony and statements she had made to border agents, and concluded that her testimony about her abusive relationship with Juan Carlos was not credible. Second, the IJ stated that even if Cortez's testimony was credible, her proposed social groups

---

[1] On appeal to the BIA, Cortez refined these two potential social groups to "women who are viewed as property by virtue of their positions within a domestic relationship" and "Guatemalan women in domestic relationships who are unable to leave."

were not cognizable under the INA because the statute requires such a group "be sufficiently particular to permit an accurate separation of members from non-members" and an "objective observer would not reliably [be able to] gauge who is or who is not a member of the group[s]" proposed by Cortez.  Finally, the IJ noted that internal relocation in Guatemala remained a "significant possibility" for Cortez.

Cortez appealed the IJ's denial to the BIA.  In its June 2015 decision, the Board chose not to address the IJ's determination as to Cortez's credibility or her ability to relocate internally in Guatemala.  Moreover, the BIA did not adopt the IJ's determination that Cortez failed to define a cognizable social group under the INA.  Rather, the BIA acknowledged that in one of its recent decisions, Matter of A-R-C-G-, the Board held that, depending upon the circumstances of an individual case, "married women in Guatemala who are unable to leave their relationship" can constitute a cognizable social group under the act." 26 I. & N. Dec. 388, 392 (BIA 2014).  Ignoring the obvious fact that Cortez was not married to Juan Carlos, the BIA stated that "the respondent and her boyfriend had not established a domestic relationship, and the respondent has limited knowledge about her former boyfriend's life."[2]  [Id.]  The BIA thus concluded that "the respondent has

_____

[2] The BIA noted that even though Cortez testified she dated her boyfriend for six months, she did not know his last name, where

- 4 -

not shown that she was in a domestic relationship and does not fit within the particular social group that she claims." As a result, the BIA upheld the IJ's denial and dismissed Cortez's appeal.

Cortez next filed a timely motion requesting that the Board reopen and reconsider her appeal, insisting the BIA committed three distinct legal errors.[3] First, she argued that it was improper for the BIA to cite Matter of A-R-C-G- in its decision because that case was decided after she had submitted her appeal brief. Second, even if the BIA appropriately cited Matter of A-R-C-G-, she should have been allowed to submit a brief in response to that decision in order to present a full argument to the Board. Finally, she contended that the BIA erred when it decided she was not in a "domestic relationship" with her boyfriend, Juan Carlos. The BIA rejected Cortez's arguments and denied her motion to reopen and reconsider. This timely petition for review of the Board's decision against reopening and reconsideration followed.

---

he lived, or his birthday and that she did not know anything about his immediate family.

[3] Cortez's motion to reopen and reconsider only addressed the BIA's decision on her application for asylum and withholding of removal. She did not seek review of the BIA's denial of her application for CAT protection. Hence, we do not consider that issue here.

We review the denial of a motion to reopen and reconsider for abuse of discretion.[4] Martinez-Lopez v. Holder, 704 F.3d 169, 171 (1st Cir. 2013). "This is a deferential standard, and we will find an abuse of discretion only when the 'denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 172 (quoting Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003)).

Cortez presses before us the three legal arguments she advanced in her motion to reopen. We address each in turn.

## A. The BIA's Reliance upon Matter of A-R-C-G-

Cortez urges that, "[i]n the interests of equity and fairness," the BIA should not be permitted to cite a case in its decision denying her appeal from the IJ that was decided after she submitted her brief to the Board. In its denial of the motion to reopen and reconsider, the BIA noted that its Practice Manual provides an opportunity for parties to file a supplemental brief if the party discovers new authority that creates a change in the law. Cortez contends that her counsel did not discover Matter of A-R-C-G- before her appeal was decided, and it cannot "be reasonably expected that in the dynamic and ever changing area of

_____

[4] Cortez's petition asks us only to reexamine the Board's decision denying her motion to reopen and reconsider her case. She does not seek and we do not review the BIA's initial dismissal of her appeal.

immigration law, a party's counsel will always be immediately apprised of every new authority that arises shortly after a brief has been submitted with the Board."

We disagree. It is counsel's role to be alert to changes in the law. See United States v. Gonzalez Vargas, 585 F.2d 546, 547 (1st Cir. 1978) (per curiam) ("It is the responsibility of counsel to keep abreast of the law and to inform the court of the correct state of the law."). Not only was the BIA acting well within its broad discretion in citing Matter of A-R-C-G- when it reviewed the IJ's decision, its failure to consider such an important and relevant intervening decision could, itself, be grounds for remand from this court. See Kadri v. Mukasey, 543 F.3d 16, 22 (1st Cir. 2008) (remanding case to the IJ to evaluate petitioner's claim in light of intervening case law).

## B. The BIA's Refusal to Allow Further Briefing

Even if the BIA could have properly cited Matter of A-R-C-G- in its decision, Cortez argues that it improperly denied her request to submit additional briefing in response to her motion to reopen and reconsider. She further asserts that the "severe time constraints" placed upon her for filing a timely motion to reconsider prevented her from fully briefing the matter and "[a]ffording more time would not have placed a burden on the BIA."

Perhaps not, but the Board had no obligation to permit further briefing. Also, in rejecting Cortez's argument, the Board

explained that Cortez had set forth her Matter of A-R-C-G-
contention in her motion to reopen and reconsider, and it was
willing to reconsider that argument sua sponte, without the benefit
of further briefing.   There was no abuse of discretion in the
Board's decision to consider Cortez's argument on the basis of the
papers before it.

**C. The BIA's Cognizable Social Group Analysis**

        In challenging the BIA's reconsideration of her Matter
of A-R-C-G- argument, Cortez insists that the BIA erred by narrowly
focusing on the fact that she was not married to her abusive
boyfriend and thus did not fit within the particular social group
defined in Matter of A-R-C-G-.   Cortez misconstrues the Board's
decision.

        In its initial decision the Board acknowledged that
Matter of A-R-C-G- recognized "married women in Guatemala who are
unable to leave their relationship" as a particular social group
potentially eligible for asylum under the INA.   26 I. & N. Dec. at
392.   However, the Board did not state that Cortez had to fit
within that same social group of married women.   To the contrary,
it focused on the domestic relationship issue, and it concluded
that Cortez had not demonstrated factually that she fit within her
own proposed social groups -- "Guatemalan women in domestic
relationships who are unable to leave" or "women who are viewed as

- 8 -

property by virtue of their positions within a domestic relationship."[5]

In reconsidering that conclusion in response to Cortez's motion to reopen, the Board elaborated on its position:

[5] By choosing to focus on the domestic relationship issue rather than the absence of Cortez's marital relationship, the BIA adds to the ongoing debate about the scope of Matter of A-R-C-G-. In at least two unpublished decisions from earlier in 2015, the BIA categorically stated that marital status should not be the determinative factor in deciding a domestic violence asylum claim. See Matter of D-M-R-, 3 (BIA June 9, 2015), https://www.scribd.com/document/271354416/D-M-R-BIA-June-9-2015 (last visited Feb. 16, 2017); Matter of E-M-, 1 (BIA Feb. 18, 2015), https://www.scribd.com/document/271353122/E-M-BIA-Feb-18-2015 (last visited Feb. 16, 2017); see also Blaine Bookey, Gender-Based Asylum Post-Matter of A-R-C-G-: Evolving Standards and Fair Application of the Law, 22 Sw. J. Int'l L. 1, 14 & n.55 (2016). In a third unpublished decision from 2015, the BIA noted that it was proper for an IJ to attach "some significance" to the absence of a marital relationship in denying an applicant's request for asylum, though it also reiterated its previous position that marital status is not necessarily determinative. Unpublished BIA Decision, 3 (BIA July 28, 2015) (available as Case No. 11018 in the Center for Gender and Refugee Studies database at the University of California Hastings College of Law); see also Bookey at 14 & n.56. However, the applicant in that case filed a motion to reconsider, and upon further review the Board reversed its initial decision, stated that it was not proper to consider marital status in the analysis, and remanded the case to the IJ for further proceedings. Unpublished BIA Decision, 1 (BIA Nov. 9, 2015) (available as Case No. 11018 in the Center for Gender and Refugee Studies database at the University of California Hastings College of Law). Because unpublished BIA decisions carry no precedential value, practitioners and scholars have urged the Board to publish more decisions on the domestic relationship issue to provide additional clarity for IJs. See, e.g., Sital Kalantry & Carolyn Wald, Asylum for Domestic Violence Survivors: Immigration Advocates Urge Board of Immigration Appeals to Publish More Precedent Cases, Catholic Legal Immigration Network, Inc. (Mar. 1, 2016), https://cliniclegal.org/news/asylum-domestic-violence-survivors-immigration-advocate-urges-board-immigration-appeals-publish (last visited Feb. 16, 2017).

> The respondent was not in a "domestic relationship." The word "domestic" is defined at http://dictionary.reference.com as "of or relating to the home, the household, household affairs, or the family[,]" or as "devoted to home life or household affairs." The respondent testified that she dated Juan Carlos happily for 3 months and did things like going to the park and getting ice cream. After dating for 3 months, he introduced her to some of the members of the gang to which he belonged, and asked her to be his woman and belong to the gang. She refused his offer. The respondent was never in a "domestic" relationship with Juan Carlos.

The record amply supports this determination by the Board. Hence, the BIA did not abuse its discretion when it denied Cortez's motion.[6]

For the forgoing reasons, the petition is **dismissed.**

---

[6] Before us, Cortez has argued that the proper cognizable social group to consider should be "women, married or unmarried, in Guatemala who are unable to leave their relationship." This description, which avoids using the term "domestic relationship," is similar to a social group Cortez proposed to the IJ, but it represents a different proposed social group from those she pressed before the BIA. Hence, Cortez may not propose this social group in a petition for review, since she "failed to exhaust this claim before the agency." Pheng v. Holder, 640 F.3d 43, 47 n.4 (1st Cir. 2011) (citing 8 U.S.C. § 1252(d)(1)).