FILED
United States Court of Appeals
Tenth Circuit

August 6, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CLAUDIA BEATRIZ HERNANDEZ
LOPEZ,

　　　　Petitioner,

v.

JEFFERSON B. SESSIONS III,
United States Attorney General,

　　　　Respondent.

Nos. 17-9517 & 17-9531
(Petitions for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McKAY**, and **BALDOCK**, Circuit Judges.
_____

Ms. Claudia Beatriz Hernandez Lopez is a Salvadoran citizen who has allegedly been tormented, raped, and threatened for rebuffing the advances of a gang member, known as "Tiny." To escape Tiny's clutches,

---

[*]　　Oral argument would not materially aid our consideration of the appeal. Thus, we have decided the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But our order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

Ms. Lopez has tried four times to enter the United States. Her fourth try resulted in these proceedings.

They began when Ms. Lopez was caught crossing the United States border. Because she was illegally in the United States, the government began removal proceedings. She sought an order withholding removal.

Removal can be withheld when it would endanger the lives of aliens based on membership in particular social groups. 8 U.S.C. § 1231(b)(3)(A). The Immigration Judge and Board of Immigration Appeals did not question the danger facing Ms. Lopez if she were returned to El Salvador. The question was instead whether this danger existed because of Ms. Lopez's membership in a particular social group. The Immigration Judge answered "no," and the Board of Immigration Appeals dismissed Ms. Lopez's appeal and motion for reconsideration. Ms. Lopez petitions for review of the Board's dismissals, and we deny the petitions.

## 1.    Ms. Lopez's Alleged Social Groups

Ms. Lopez has focused on three groups: (1) Salvadoran women unable to leave domestic relationships,[1] (2) Salvadoran women who refuse to be in domestic relationships with gang members, and (3) Salvadoran

---

[1]    In the administrative proceedings, Ms. Lopez included "attempted domestic relationships." In our court, however, she has dropped this part of her proposed group.

women who refuse to be victims of gang members' sexual predation.[2] The Board found that Ms. Lopez was not a member of the first group and that the two other groups were not socially distinct. We agree.

**2.      The First Alleged Social Group: Salvadoran Women Unable to Leave Domestic Relationships**

The Board found that Ms. Lopez could not rely on the first group (Salvadoran women unable to leave domestic relationships) because she was never in a domestic relationship with Tiny. Ms. Lopez contends that she was forced into a relationship with Tiny. But the Board could reasonably

- find that Ms. Lopez had failed to prove eligibility for relief and

- decline to reconsider this finding.

---

[2]      In the administrative proceedings, Ms. Lopez had also alleged the existence of five other social groups:

1.   Salvadoran women who fled future sexual violence by gang members,

2.   female victims of domestic or sexual violence who fled further persecution in El Salvador,

3.   Salvadoran women who were sexually victimized by gang members,

4.   unaccompanied women returning to El Salvador after living in the United States, and

5.   Salvadoran women lacking familial protection.

*The Board did not err in finding that Ms. Lopez had failed to prove eligibility for relief.* In seeking withholding of removal, Ms. Lopez had to prove eligibility for relief. 8 U.S.C. § 1231(b)(3)(C); *see Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015) ("The applicant must establish eligibility for . . . withholding of removal."). For eligibility, Ms. Lopez had to show that removal would create a clear probability of persecution because of her membership in a particular social group. *Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012).[3] The Board found that Ms. Lopez was not a member of her proposed social group: Salvadoran women unable to leave domestic relationships.

We review this finding under the substantial-evidence standard. *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). Under this standard, the evidence is considered substantial unless every reasonable adjudicator would be compelled to reach a different finding. *Id.*

In our view, substantial evidence supported the Board's finding that Ms. Lopez and Tiny had never been in a domestic relationship. Ms. Lopez rejected Tiny's advances, hid in her house for months to avoid Tiny, and quit her job to isolate herself from Tiny. Focusing on these steps to evade

---

[3]    Ms. Lopez could also have satisfied her burden by tying the threat of persecution to her race, religion, nationality, or political opinion. *Pang*, 665 F.3d at 1233. But she did not allege any of these reasons.

4

Tiny, the Board found that he and Ms. Lopez had never been in a domestic relationship.

On appeal, Ms. Lopez points to evidence of

- her rape as an initiation into a coerced relationship with Tiny and other gang members,

- Tiny's statements that Ms. Lopez would be his, and

- descriptions of women as "girlfriends of the gang."

From this evidence, the Board could have reasonably inferred that Ms. Lopez had been in an involuntary relationship with Tiny. But such an inference was not compelled. And even with this inference, the Board could have reasonably found that Ms. Lopez's forced relationship had not constituted a true "domestic relationship." A contrary finding could suggest that every female rape victim of a gang member was in a domestic relationship with the rapist, and the Board could reasonably balk at equating rape and a domestic relationship. *Cf. Cardona v. Sessions*, 848 F.3d 519, 523–24 (1st Cir. 2017) (holding that the evidence supported the Board's finding that a Guatemalan woman had never been in a "domestic relationship" with a male individual even though the two had dated for several months). Thus, the Board had substantial evidence to find that Ms. Lopez had not been in a domestic relationship with Tiny.

*The Board acted within its discretion in dismissing the motion for reconsideration.* Ms. Lopez contends that the Board erred in dismissing not

5

only the appeal from the Immigration Judge's decision but also the motion for reconsideration. We conclude that the Board did not err in dismissing the motion for reconsideration.

In reviewing the denial of reconsideration, we apply the abuse-of-discretion standard. *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015). In evaluating whether the Board abused its discretion, we consider its reasons for dismissing the motion for reconsideration. The Board stated that Ms. Lopez

- had essentially repeated the same arguments that she had made earlier and

- had not shown any errors in the Board's decision.

Ms. Lopez contends that the Board overlooked its prior failure to address her allegation of a nonconsensual relationship with Tiny. We disagree. In dismissing the appeal, the Board noted that Ms. Lopez had presented evidence of identification as Tiny's girlfriend and inability to leave "a relationship forced on her." Admin. Record at 103, No. 17-9531. Notwithstanding this evidence, the Board rejected Ms. Lopez's challenge to the Immigration Judge's finding of "insufficient indicia of a domestic or comparable type of relationship." *Id.*

In seeking reconsideration, Ms. Lopez acknowledged that the Board had found "insufficient indicia" of a relationship with Tiny. *Id.* at 94–95. She contested this finding, repeating her argument that she had been in a

6

nonconsensual relationship with Tiny. *Id*. at 94–96. The Board had acknowledged this argument when it dismissed the appeal and had no need to repeat its reasons when dismissing Ms. Lopez's motion for reconsideration. As a result, we conclude that the Board acted within its discretion in dismissing the motion for reconsideration.

**3.      The Second and Third Alleged Social Groups: Salvadoran Women Who Refuse to Be in Domestic Relationships with Gang Members or to Be Victimized by Their Sexual Predation**

Ms. Lopez also identifies two other social groups of Salvadoran women: (1) those who refuse to participate in domestic relationships with gang members and (2) those who refuse to be victimized by gang members' sexual predation. The Board concluded that these two groups were not perceived as socially distinct in El Salvador. We agree.

In reviewing the Board's initial decision, we engage in de novo review because the issue involves a matter of law. *See Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005) ("What constitutes a particular social group is a pure question of law that we review de novo."). In conducting de novo review, we consider whether the underlying facts support characterization of Ms. Lopez's proposed groups as particular social groups under 8 U.S.C. § 1231(b)(3)(A). This matter of law turns on the evidence presented in the administrative proceedings.

We consider this evidence under the overarching test of what constitutes a particular social group. To qualify, a group must be particular

7

and socially distinct. *Rodas-Orellana v. Holder*, 780 F.3d 982, 990–91 (10th Cir. 2015). A group is considered particular when the boundaries are well defined. *Rivera-Barrientos v. Holder*, 666 F.3d 641, 648–49 (10th Cir. 2012). A group is considered socially distinct only if the society in the alien's home country

- would consider individuals with the pertinent trait a distinct social group and

- would be able to identify someone as a member of the group.

*Id.* at 650–51; *see also Matter of A-B-*, 27 I. & N. Dec. 316, 336 (A.G. June 11, 2018) ("[T]he key thread running through the particular social group framework is that social groups must be classes recognizable by society at large."). In addition, the "particular social group *must* 'exist independently' of the harm asserted in an application for . . . statutory withholding of removal." *Matter of A-B-*, 27 I. & N. Dec. 316, 334 (A.G. June 11, 2018) (emphasis in original) (citations omitted).

In applying this test, we have rejected another alien's proposed group of young women who have resisted gang recruitment in El Salvador, reasoning that such individuals are in substantially the same situation as anyone who has crossed a gang or is a perceived threat to the gang's interests. *Id.* at 653. The same is true of the two groups proposed here.

Ms. Lopez points to evidence showing the existence of

- Salvadoran programs supporting female victims of sexual violence,

8

- widespread sexual violence against women in El Salvador, and

- widespread sexual violence by Salvadoran gang members.

But Ms. Lopez has not proposed a group consisting of victims of sexual violence; she has proposed groups defined by a refusal to participate in domestic relationships with gang members or to succumb to their sexual predation. Although her evidence shows widespread sexual violence in El Salvador, that violence is not limited to women who resist gang members' domestic relationships. *See Umaña-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (holding that a group of young Salvadorans threatened for refusal to join a gang lacks social visibility because gang violence in El Salvador affects all segments of the population, not just those refusing to join a gang); *see also Rodas-Orellana v. Holder*, 780 F.3d 982, 991–93 (10th Cir. 2015) (stating that a group—Salvadoran males threatened and actively recruited by gangs who resist joining because they oppose the gangs—is not socially distinct). And Ms. Lopez did not present any evidence that Salvadorans view women in her two proposed groups as discrete societal groups.[4] Thus, we conclude that the two proposed groups lack the social distinction required for a "particular social group." *Cf.*

---

[4]    Ms. Lopez did present evidence that referred to "girlfriends of the gangs." But her evidence did not restrict this term to females refusing to enter domestic relationships with gang members or resisting sexual violence perpetrated by gang members.

9

*Vega-Ayala v. Lynch*, 833 F.3d 34, 39–40 (1st Cir. 2016) (stating that evidence of widespread domestic violence in El Salvador does not support a social group involving "Salvadoran women in intimate relationships with partners who view them as property").[5]

**4.      The Harvard Clinic's Motion for Leave to Appear as Amicus Curiae**

The Harvard Immigration and Refugee Clinical Program requests leave to appear as an amicus curiae. As an amicus, the Harvard Clinic would characterize Ms. Lopez's gender as the particular social group causing her persecution. We deny the request for amicus status.

**5.      Ms. Lopez's Request for Leave to Proceed In Forma Pauperis**

Ms. Lopez requests leave to appear in forma pauperis. We grant this request.

                                                    Entered for the Court


                                                    Robert E. Bacharach
                                                    Circuit Judge

---

[5]      We express no opinion on whether stronger evidence of social distinction could support recognition of the two proposed groups as "particular social groups."

*Hernandez Lopez v. Sessions III*, Nos. 17-9517 & 17-9531

**BACHARACH**, J., concurring.

The Harvard Clinic moved for leave to file an amicus brief, seeking to argue that Ms. Lopez's gender constituted the particular social group causing her persecution. The majority correctly denies this motion.

The dissent would grant the Clinic's motion on the grounds that its argument is important and lies at the heart of Ms. Lopez's administrative claims.[1] In my view, however, we would lack jurisdiction to consider the Harvard Clinic's argument. Our jurisdiction is confined to claims exhausted in the administrative proceedings. *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007). And those claims did not include persecution based on Ms. Lopez's gender.

In proceedings before the Immigration Judge, Ms. Lopez alleged membership in eight different "particular social groups." When appealing to the Board, she narrowed her focus to three of these groups. But in her arguments to either the Immigration Judge or the Board, she never identified her gender as a particular social group. Thus, the Harvard

---

[1] Even when we have jurisdiction to consider an amicus's new arguments, we generally decline to exercise that jurisdiction when the arguments are not advanced by a party. *EagleMed LLC v. Cox*, 868 F.3d 893, 902 (10th Cir. 2017); *see also Tyler v. City of Manhattan*, 118 F.3d 1400, 1404 (10th Cir. 1997) (stating that when an amicus curiae presents arguments not raised by a party, we should consider the arguments only in exceptional circumstances).

Clinic's argument is unexhausted. *See Cardona v. Sessions*, 848 F.3d 519, 524 n.6 (1st Cir. 2017) (holding that the petitioner failed to exhaust her claim based on a proposed particular social group that differed from the proposed groups raised before the Board); *Kanagu v. Holder*, 781 F.3d 912, 917 (8th Cir. 2015) (holding that the court lacked jurisdiction to consider a proposed social group where the petitioner had urged a broader formulation of the group to the Board of Immigration Appeals); *Duarte-Salagosa v. Holder*, 775 F.3d 841, 845 (7th Cir. 2014) (holding that the petitioner had failed to exhaust a claim regarding a proposed particular social group); *see also Torres-Rivera v. Sessions*, 706 F. App'x 482, 485 (10th Cir. 2017) (unpublished) (holding that the court lacked jurisdiction to consider a proposed particular social group that the petitioner had not identified in his appeal to the Board).

The dissent contends that the Harvard Clinic's argument lies at the heart of Ms. Lopez's administrative claims. But that is not enough; exhaustion required Ms. Lopez to present the Board of Immigration Appeals with "the *same specific legal theory*" before she can present it in court. *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (emphasis in original). As a result, we can consider an issue exhausted only if Ms. Lopez had presented the claim to the Board of Immigration Appeals "in the manner it is now addressed before us." *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1018 (10th Cir. 2007). Similarity is not enough,

2

and we would lack jurisdiction over the Harvard Clinic's argument regardless of how close the Harvard Clinic's contention is to the theories that Ms. Lopez presented in the Board of Immigration Appeals.

Unlike the dissent, the Harvard Clinic does not question Ms. Lopez's failure to argue in the administrative proceedings that she had been persecuted on account of her gender. Instead, the Clinic contends that we can consider its argument because the Board necessarily decided that Ms. Lopez had not been persecuted on account of her gender. I assume that this contention is based on our narrow exception to the exhaustion requirement. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1119–22 (10th Cir. 2007). Under this exception, we have jurisdiction over arguments when the Board decides them sua sponte. *Id*. But this exception is limited. *See Garcia-Carbajal*, 625 F.3d at 1235 ("*Sidabutar*'s 'sua sponte exhaustion' rule . . . is a narrow one."). This exception applies only if the Board of Immigration Appeals "(1) clearly identif[ies] a claim, issue, or argument not presented by the petitioner; (2) exercise[s] its discretion to entertain that matter; and (3) explicitly decide[s] that matter in a full explanatory opinion or substantive discussion." *Id*. Satisfaction of all three requirements is necessary to trigger the exception. *Id*.

The first and third requirements were not met. Even if the Board had necessarily considered gender as a particular social group, this consideration was not explicit and the Board did not clearly identify an

issue involving Ms. Lopez's gender as a particular social group. Thus, the first and third requirements would not have been satisfied even if the Board had necessarily rejected the Harvard Clinic's proposed argument.

*

Because the Harvard Clinic's new argument is unexhausted and was not decided sua sponte, we would lack jurisdiction to address gender as a particular social group. As a result, I agree with the majority's denial of leave to file an amicus brief.

*Hernandez Lopez v. Sessions, Nos. 17-9517 & 17-9531*

**McKAY**, dissenting.

I respectfully dissent. Like many other types of immigration proceedings, removal proceedings present "extremely serious problems" and "involve tremendously high stakes for the individual." *Knauer v. United States*, 328 U.S. 654, 659 (1946). As the Supreme Court has repeatedly recognized, deportation may result "in loss of both property and life, or of all that makes life worth living." *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922); *see also, e.g.*, *Bridges v. Wixon*, 326 U.S. 135, 147 (1945). The record in this case certainly suggests that Ms. Hernandez Lopez risks such consequences if she is removed back to her native country. "[W]here the fate of a human being is at stake," *Knauer*, 328 U.S. at 659, I believe we must be especially cautious to avoid relying on procedural grounds to evade consideration of the serious problems before us.

While it is true that Ms. Hernandez Lopez's brief did not raise the precise argument that the Harvard Immigration and Refugee Clinical Program raises in its proposed *amicus* brief, the underlying basis of all her arguments to the Board of Immigrations Appeals and to this court has been her status as a woman and the distinct vulnerability she faces in her home country because of her gender. Thus, the heart of her claim remains the same even though the HIRC framed the argument differently. Given the "tremendously high stakes" this case holds for Ms. Hernandez Lopez's safety and life, I believe the interests of justice call for this court to exercise its discretion to consider the arguments the HIRC has made

on her behalf. *Cf. Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (holding that "a federal appellate court is justified in resolving an issue not passed on below . . . where injustice might otherwise result") (internal quotation marks and citations omitted). I would accordingly grant the HIRC's motion to file a brief as *amicus curiae*.

I would then hold, in accordance with the HIRC's persuasive brief and the authorities cited therein, that (1) Ms. Hernandez Lopez's status as a woman is sufficient to establish her membership in a particular social group of persons who share a common immutable characteristic, and (2) she has been "persecuted because of the inferior status accorded to [her] gender in [her] home society." *Fornah (FC) v. Sec'y of State for Home Dep't*, [2006] UKHL 46, para. 86. As we noted in *Niang v. Gonzales*, 422 F.3d 1187, 1199 (10th Cir. 2005), some may contend that gender should not be used as a group-defining characteristic, since "[o]ne may be reluctant to permit . . . half a nation's residents to obtain asylum on the ground that women are persecuted there." However, "the focus with respect to such claims should be not on whether either gender constitutes a social group (which both certainly do) but on whether the members of that group are sufficiently likely to be persecuted that one could say that they are persecuted 'on account of' their membership." *Id.* at 1199–1200 (quoting 8 U.S.C. § 1101(a)42(A)). In many cases, "only certain women," like "those who protest inequities" or those who belong to a particular tribe, will "suffer harm severe

-2-

enough to be considered persecution." *Id.* at 1200. In *Niang*, we held that the petitioner had identified a social group based on "gender plus tribal membership," and we did not address whether gender alone would have sufficed under the particular circumstances of that case. *Id.* However, our holding in *Niang* certainly left open the possibility that gender alone could be sufficient to satisfy the immigration standard in a particular case, where there is evidence that women are persecuted "on account of" their membership in this particular, albeit large, social group.

The record in this case strongly supports the conclusion that women in El Salvador face such persecution. *See, e.g.*, R. at 39 ("Increasing numbers of women and girls are fleeing El Salvador, Guatemala and Honduras amid mounting evidence that criminal gangs are systematically targeting adolescent girls as sexual slaves."); R. at 40 (According to the UN's special rapporteur for contemporary slavery, "'Gangs reflect the deeply patriarchal power structures that prevail in this region,' [and] 'It's a problem affecting millions of women and girls.'"); R. at 45 ("According to an Associated Press investigation, members of [certain criminal] gangs in El Salvador typically subject their girlfriends to gang rape and even killings, in addition to kidnapping and abusing women and girls who are not affiliated with the group."); R. at 46 ("As illustrated by the AP, violence against women has reached endemic proportions in El Salvador. In 2012, the country had the highest rate of femicide in the world, with many of the

murders attributed to gang members."); R. at 357 ("'Any girl or woman who gets near this world sooner or later will be collectively abused by the gang.'"); R. at 357 ("'All of the gang members victimize women.'"); R. at 359 ("The unequal treatment of women is seen in gang initiation practices."); R. at 362 ("The violence gripping El Salvador affects women in a different way than men. . . . [G]ang and security force violence has exacerbated a broader, long-standing acceptance of violence against women."); R. at 362 ("The prevalence of sexual violence against women in El Salvador is . . . staggering."); R. at 363 ("The targeted killing of women based on their gender, known as femicide, is also on the rise."); *see also Angoucheva v. INS*, 106 F.3d 781, 792 n.2 (7th Cir. 1997) (Rovner, J., concurring) ("Rape and sexual assault are generally understood today not as sexual acts borne of attraction, but as acts of violent aggression that stem from the perpetrator's power over and desire to harm his victim.").

Ms. Hernandez Lopez is a member of a particular and socially distinct social group defined by the immutable characteristic of gender. She has presented ample evidence that she has faced and continues to face a severe threat of persecution on account of her membership in this social group. Her removal would place her at a very serious risk of losing "all that makes life worth living," if not life itself. *Ng Fung Ho*, 259 U.S. at 284. Therefore, in the interests of justice, I would consider the arguments raised in HIRC's *amicus* brief and grant relief to Ms. Hernandez Lopez on that basis.