**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOSE G. RAMOS,

    Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

    Respondent.

No. 19-9549
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

Petitioner Jose G. Ramos,[1] a native and citizen of El Salvador, seeks review of

a decision from the Board of Immigration Appeals (BIA) denying his motion to

reopen his immigration proceedings. Exercising jurisdiction under 8 U.S.C.

§ 1252(a), we deny Mr. Ramos's petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We note that the petitioner also refers to himself as Jose Ramos Perdomo.

I.  Background

Mr. Ramos entered this country without inspection in September 1993.  He states that he then left the United States and returned to El Salvador for a brief period of time from September 2001 to November 2001.  On November 3, 2001, Mr. Ramos was paroled into this country.[2]

In February 2005, Mr. Ramos was served with a Notice to Appear (NTA).  The NTA charged Mr. Ramos with being removable for remaining in this country after the expiration of his parole period without possessing a valid entry document.  The NTA informed him of the location of his hearing, but it did not include the date or time of his hearing.  He was later mailed a Notice of Hearing containing that information.

Mr. Ramos appeared for an initial Master Calendar hearing on April 21, 2005.  At the conclusion of the hearing, the matter was reset to May 19, 2005, but Mr. Ramos did not appear at that hearing.  As a result of his failure to appear, the Immigration Judge (IJ) ordered Mr. Ramos removed in absentia that same day.  Mr. Ramos then filed a pro se motion to reopen on May 31, 2005, but the IJ denied

_____

[2] "The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

the motion because Mr. Ramos had not given the court a good reason for his failure to appear.

In November 2005, Mr. Ramos filed a counseled motion to reopen. The IJ denied that motion in February 2008 because it was untimely. The IJ noted that Mr. Ramos attributed his failure to appear at the May 2005 hearing to his attorney's advice and that the circumstances surrounding his claim were suggestive of his prior counsel's ineffectiveness. Although the IJ explained that the deadline for filing a motion to reopen could be tolled for ineffective assistance of counsel, the IJ determined that Mr. Ramos had failed to meet the requirements for raising such a claim, which are set forth in *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). The IJ therefore denied the motion to reopen. The BIA affirmed the IJ's decision. Mr. Ramos filed a motion to reconsider the BIA's decision, but the BIA denied that motion.

In October 2018, Mr. Ramos filed his third motion to reopen. He argued that the BIA should grant his motion because he missed his hearing due to his attorney's ineffective assistance. He explained that he wanted to reopen his proceedings because he was prima facie eligible for cancellation of removal. He also argued, in the alternative, that his proceedings should be terminated because he did not receive a valid charging document and therefore the immigration court lacked jurisdiction.

The BIA denied the motion because it was untimely and Mr. Ramos had failed to establish that the filing deadline should be tolled. The BIA determined that although Mr. Ramos's motion complied with the procedural requirements outlined in

3

*Matter of Lozada*, he failed to demonstrate due diligence in filing it. The BIA also rejected Mr. Ramos's alternative argument that jurisdiction did not vest with the IJ based on the purportedly defective NTA, relying on its decisions in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018), and *Matter of Pena-Mejia*, 27 I. & N. Dec. 546 (BIA 2019). The BIA further concluded that Mr. Ramos could not establish the ten years of continuous physical presence required to be eligible for cancellation of removal because the stop-time rule[3] was triggered in 2005, a little more than three years after he entered the country.

Mr. Ramos timely petitioned for review of the BIA's decision.

II. Discussion

We review the BIA's denial of a motion to reopen for abuse of discretion. *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id*. (internal quotation marks omitted).

In general, an alien may file only one motion to reopen and must file that motion within ninety days of the final order of removal. *See* 8 U.S.C. § 1229a(c)(7)(A),(C)(i); 8 C.F.R. § 1003.2(c)(2). But the filing deadline may be tolled if the motion to reopen is based on ineffective assistance of counsel. *Mahamat*

---

[3] Under the so-called "stop-time rule," an alien's period of continuous presence ends when the government serves the alien with a NTA. *See* 8 U.S.C. § 1229b(d)(1).

*v. Gonzales*, 430 F.3d 1281, 1283 (10th Cir. 2005).  Tolling, however, is available only if an alien exercises due diligence in pursuing his case during the period the alien seeks to toll.  *Id.*

Mr. Ramos first argues that he exercised due diligence in filing his third motion to reopen because he did not learn of his attorney's ineffective assistance until 2017, when his current counsel made a request under the Freedom of Information Act for his immigration files.  But, as the BIA explained, Mr. Ramos's "claim is not supported by the record," because in his second motion to reopen, he "attributed his failure to appear at his 2005 hearing to his attorney's ineffective assistance."  R. at 4.  The BIA further observed that in the February 2008 denial of the second motion to reopen, the IJ "explain[ed] the procedural requirements for filing a motion to reopen based upon ineffective assistance of counsel and specifically note[d] that . . . the filing deadline for such motions can be tolled if the alien can establish due diligence."  *Id.*  As the BIA aptly stated, "[t]hus, the issue of ineffective assistance of counsel and equitable tolling was first addressed approximately 11 years ago," but Mr. Ramos "waited over a decade to comply with the procedural requirements of *Matter of Lozada* and file a motion to reopen with this

5

Board." *Id.* The BIA did not abuse its discretion in concluding that Mr. Ramos did not act with diligence in pursuing his claim of ineffective assistance of counsel.[4]

Mr. Ramos next argues that he is prima facie eligible for cancellation of removal because he has ten years of continuous physical presence in this country. Although he acknowledges that he was paroled into the United States on November 3, 2001, he asserts that this was after a brief trip back to El Salvador, and he disputes the BIA's characterization of this date as the beginning of his period of continuous physical presence. He contends we should remand to the BIA with instructions to reopen his immigration proceedings so that his application for cancellation of removal may be considered. We are not persuaded.

First, Mr. Ramos fails to explain how his purported eligibility for cancellation of removal excuses the fact that his third motion to reopen did not comply with the time and number limitations for motions to reopen, *see* 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2). As we have just explained, the BIA did not abuse its discretion in denying Mr. Ramos's untimely motion to reopen.

Second, Mr. Ramos did not exhaust the specific argument he now raises about his continuous physical presence and his brief departure in 2001. In order to preserve arguments for review in this court, an alien must exhaust his administrative remedies

---

[4] Mr. Ramos also argues the merits of his claim for ineffective assistance of counsel. *See* Pet'r's Br. at 9-10. The BIA did not reach this issue because it determined he failed to demonstrate due diligence in pursuing this claim. Because we agree with the BIA as to Mr. Ramos's lack of due diligence, we decline to address the merits of his claim for ineffective assistance of counsel when it provides no basis to grant the petition for review and the BIA has not addressed it in the first instance.

6

by first presenting those arguments to the BIA. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right[.]"). We explained in *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010), that "[t]o satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." Mr. Ramos's NTA stated that he had been paroled into the country on November 3, 2001, *see* R. at 244, so he was on notice that the BIA considered that his entry date. But in his third motion to reopen, he simply alleged that he entered this country in September 1993, *id*. at 19, and stated that "he ha[d] been continuously present in the United States for at least 10 years," *id*. at 24. Mr. Ramos never argued that the November 2001 parole date on his NTA was not his actual date of entry nor did he assert that his time in El Salvador in 2001 was brief and did not interrupt his ten years of continuous physical presence. Mr. Ramos "may not add new theories seriatim as the litigation progresses from the agency into the courts." *Garcia-Carbajal*, 625 F.3d at 1238. We decline to address Mr. Ramos's general argument about his eligibility for cancellation for removal as it provides no basis to reopen his immigration proceedings, and we lack jurisdiction to consider his newly-raised argument regarding his ten years of continuous physical presence, *see id.* at 1237-38 (explaining that failure to exhaust is jurisdictional).

Mr. Ramos's final argument is that under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the NTA served on him was insufficient to confer subject matter jurisdiction on the immigration court because it did not designate the date and time of his

hearing.[5]  *See* Pet'r's Br. at 15-16.  He therefore asserts we should remand this matter to the BIA with instructions to terminate his removal proceedings.  We disagree.

In *Pereira*, the Supreme Court held that an NTA that fails to designate the specific time and place of a removal proceeding does not trigger the stop-time rule to end the period of continuous presence in the United States required for cancellation of removal.  *See* 138 S. Ct. at 2109-10.[6]  But, as we explained in *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1018 (10th Cir. 2019), *Pereira* "did not address the distinct question of whether a defect in the notice to appear would preclude jurisdiction over the removal proceedings."  Instead, "the Court expressly declined to address this broader question, emphasizing that the decision was 'much narrower.'"  *Id*. (quoting *Pereira*, 138 S. Ct. at 2113).

---

[5] Mr. Ramos raises additional arguments challenging the IJ's jurisdiction, *see* Pet'r's Br. at 16-23, but we agree with the government that these arguments advance new legal theories to support Mr. Ramos's general jurisdictional claim that he did not present to the BIA.  We therefore lack jurisdiction to consider his unexhausted jurisdictional arguments.  8 U.S.C. § 1252(d)(1); *Garcia-Carbajal*, 625 F.3d at 1237-38.

[6] Mr. Ramos states that "*Pereira* would require that [the Department of Homeland Security] issue a properly executed NTA in order to trigger the stop time rule."  Pet'r's Br. at 15.  To the extent he is not simply stating the holding in *Pereira*, but is instead arguing that his defective NTA did not trigger the stop-time rule in his case, he does not adequately develop this argument in his brief.  We therefore agree with the government that he has waived any challenge to the BIA's conclusion, based on its decision in *Matter of Mendoza-Hernandez*, 27 I. & N. Dec. 520 (BIA 2019), that the NTA issued in 2005 triggered the stop-time rule.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived[.]").

8

We did, however, address that broader question in *Lopez-Munoz*. There, the petitioner sought review of the denial of her motion to reconsider the BIA's denial of her second motion to reopen. Similar to Mr. Ramos, she argued that her NTA was defective because it did not contain the time or place of her hearing. *Id*. at 1015. She further argued that this defect was jurisdictional. *Id*. We rejected her jurisdictional argument, joining the other circuits that had declined to read *Pereira* as a limitation on an IJ's jurisdiction. *Id*. at 1018. More recently, in *Martinez-Perez v. Barr*, 947 F.3d 1273, 1278 (10th Cir. 2020), we reiterated our rejection of the *Pereira*-based argument that a defective NTA deprives an IJ of jurisdiction, and further "held that the requirements relating to notices to appear are non-jurisdictional, claim-processing rules." Based on our precedential decisions in *Lopez-Munoz* and *Martinez-Perez*, we reject Mr. Ramos's argument that his defective NTA deprived the IJ of jurisdiction over his removal proceedings.

III. Conclusion

We deny Mr. Ramos's petition for review.

Entered for the Court

Jerome A. Holmes
Circuit Judge

9