**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 16, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

XENIA GLORIBEL GRANADOS-
APARICIO,

      Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

      Respondent.

No. 22-9515
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

Xenia G. Granados-Aparicio, a native and citizen of El Salvador, petitions for

review of the Board of Immigration Appeals' (BIA) decision that dismissed her

appeal from the Immigration Judge's (IJ) denial of her application for withholding of

removal under the Convention Against Torture (CAT).  The BIA determined that

Petitioner failed to show it is more likely than not that she would be tortured upon

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

her return to El Salvador with the acquiescence of Salvadoran public officials. Exercising jurisdiction under 8 U.S.C. § 1252(a)(4), we deny the petition.

## I.  BACKGROUND

Petitioner was born in El Salvador in 1985.  She entered the United States in early July 2013, without being inspected, admitted, or paroled.  In September 2017, she filed an application for asylum, withholding of removal, and relief under the CAT.  She sought asylum and withholding of removal based on alleged persecution linked to her political opinion and membership in a particular social group, which she defined as the "[f]amily of gang members."  Admin. R. at 138.

As to her claim for CAT relief, Petitioner's application stated that two of her cousins who were associated with the 18th Street Gang (Gang) told some friends that they wanted to kidnap her son because his father was residing in the United States and had enough money to pay a ransom.  According to Petitioner, her cousin Carlos —a police officer—overheard the two cousins talking about the kidnapping plot and warned Petitioner.  Carlos told her she could file a police report, but it would probably not stop the kidnapping and might backfire because it would alert the Gang that she knew about the plot, which in turn would put her life and that of her son "at great risk of [harm]."  *Id.* at 322.  "I fear for my life and that of my son because the . . . Gang knows the reason why I left El Salvador.  The [G]ang will seek retribution for [me leaving the country].  I sincerely believe the [G]ang will [harm] me if I return to my country."  *Id.*

2

For the most part, Petitioner's testimony at the merits hearing tracked the information in her application but she added more detail about the kidnapping plot. Contrary to the course of events described in her application, Petitioner testified that she first learned of the plot in early June 2013 when the two Gang-affiliated cousins "sent me a [note] saying that they needed money and that if I didn't give them the[] money, . . . they . . . [would] kidnap my son." *Id.* at 142. In the note, the would-be kidnappers demanded that she pay them $300 a week.

Petitioner explained that her husband came to the United States in 2005 "[b]ecause we were very poor . . . and . . . to give us a better future." *Id.* at 140.

> [S]ince [he arrived in the United States, my husband] was sending me some . . . money [in El Salvador,] . . . so the[] [Gang] thought that if they kidnapped [my son], they could get some money out of us. And so that was why . . . my husband said that I should take the risk and . . . come [to the United States] with my son.

*Id.* at 141. Petitioner added that her family was "from the ARENA party," and the Gang was affiliated with "the FMLN [party] . . . [and] that was also why they were extorting us." *Id.* at 167.

According to Petitioner, after she received the note, she notified Carlos about the kidnapping plot and asked for his advice. He recommended that she not file a police report and told her to "go somewhere else, and then that way [the Gang] won't do anything to you or your son." *Id.* at 164. She left for the United States a few weeks later.

Since coming to the United States, Petitioner learned that sometime in 2018, members of an unidentified gang killed her cousin Marvin when he refused to "give

3

them the money from . . . [some] livestock that he had sold." *Id.* at 145. Petitioner was told that "they cut his head off right in front of his mother." *Id.* at 144.

Petitioner admitted that she (1) was never physically harmed by the Gang or any Salvadoran officials; (2) "the state of El Salvador is prosecuting gang members and putting them in prison," *id.* at 162; (3) the gangs go after everybody—not just the families of gang members or people who share her political beliefs; (4) both her parents and several siblings are living safely in El Salvador; and (5) she never moved from her small town to a large city where people are generally safer from gangs.

## II.  AGENCY PROCEEDINGS

After "giv[ing] careful consideration to all of the evidence submitted, regardless of whether it has been specifically mentioned," the IJ denied Petitioner's application. *Id.* at 99. Although Petitioner "testified credibly," *id.* at 100, the IJ found that she failed to carry her burden to show her entitlement to asylum, withholding of removal, or relief under the CAT.

The IJ found that Petitioner was ineligible for asylum because she failed to file her application for relief within one year after her arrival in the United States and there was no excuse for "her tardy filing." *Id.* The IJ further found that even if "she [was] not precluded from asylum eligibility based on her late filing," *id.*, Petitioner's asylum claim failed because:  (1) "the one threat she faced in El Salvador—the kidnapping of her son to extort money from her—does not rise to the level of persecution," *id.* at 101; (2) she failed to "show[] there is a reasonable possibility she will be persecuted on account of a protected ground if she returns to [El Salvador],"

4

*id.*; and (3) "her testimony clearly shows the gang members were interested in extorting money from many people in her community and would exact harm on anyone who resisted their demands"—not just members of her family or those who share her political beliefs, *id.* at 103.  Having failed to establish a well-founded fear of future persecution on account of a protected ground, the IJ necessarily found that Petitioner failed to "demonstrate[] it is more likely than not her life or freedom would be threatened on account of a protected ground if she returns to El Salvador," and denied withholding of removal.  *Id.* at 104.

The IJ also denied CAT relief, finding that Petitioner "has neither been physically harmed by any authorities in the Salvadoran government, nor by any private actors, such as members of any criminal organization."  *Id.*  "Instead, she fears she will fall victim to gang criminality because her gang affiliated cousins have told her they will kidnap her son in order to extort money from her, since her husband sends the family money from the United States."  *Id.*  While "the criminal threats . . . are frightening and genuinely cause [Petitioner] to fear return to her country, . . . the rumored threats do not amount to torture.  They also do not indicate a more likely than not chance that she will face torture if she returns home."  *Id.*  Moreover, the IJ found no evidence that the torture would occur with the acquiescence of Salvadoran officials.

> [E]ven though the Court acknowledges the Salvadoran government could have been more effective in offering [Petitioner] protection and could be more effective in its investigation and prosecution of gang related crime, an examination of the totality of the evidence does not lead the Court to find

5

[she] has met her burden to show she qualifies for protection under the [CAT].

*Id.*

The BIA determined that Petitioner waived any arguments concerning asylum and withholding of removal by failing to meaningfully challenge them on appeal and affirmed the IJ's "determination that [Petitioner] has not set forth a valid claim for protection under the CAT." *Id.* at 4. The BIA found that the IJ "meaningfully consider[ed] [Petitioner's] testimony and country conditions evidence regarding gang violence in El Salvador." *Id.* at 5. Specifically, the BIA determined that the IJ "clearly stated that she was relying on country conditions information, and we agree that evidence of pervasive gang violence in El Salvador does not establish an individualized risk of torture in the future by a government actor." *Id.* And "[w]hile the [IJ] may not have specifically referenced [Petitioner's] testimony regarding statements made by her cousin [Carlos] who is a police officer," the IJ stated that she considered "all [the] evidence . . . in reaching her decision and we are not persuaded that the [IJ's] factual findings or legal conclusions are not based on the totality of the evidence." *Id.*

Petitioner does not pursue the asylum and withholding claims in her petition for review—she seeks review only of the agency's denial of her claim for CAT relief.[1]

---

[1] The BIA also denied Petitioner's motion to remand for the IJ to consider her eligibility for post-conclusion voluntary departure. She does not contest the agency's denial of the motion to remand.

### III.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review both factual and legal challenges to the BIA's denial of relief under the CAT.  *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690-91 (2020) (holding that the prohibition on reviewing factual challenges to final orders of removal under 8 U.S.C. § 1252(a)(2)(c) does not apply to CAT orders).

Because a single member of the BIA issued the order affirming the IJ's decision, we review "both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion."  *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009); *see also Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (explaining that when the BIA's decision provides "a condensed version" of the IJ's reasons for the decision, we may consult the IJ's "more complete discussion" to "give substance to the BIA's reasoning").

We review legal determinations do novo, *see Igiebor v. Barr*, 981 F.3d 1123, 1131 (10th Cir. 2020), and the BIA's factual findings under the deferential substantial-evidence standard, *see Nasrallah*, 140 S. Ct. at 1692 ("Although a noncitizen may obtain judicial review of factual challenges to CAT orders, that review is highly deferential.").  Under the substantial-evidence standard, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  We must affirm the agency's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (internal quotation marks omitted); *see also Htun v. Lynch*, 818 F.3d

7

1111, 1119 (10th Cir. 2016) ("[E]ven if we disagree with the BIA's [findings], we will not reverse if they are supported by substantial evidence and are substantially reasonable." (internal quotation marks omitted)).

## IV.  LEGAL FRAMEWORK

"To receive the protections of the CAT, an applicant must demonstrate 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Ritonga v. Holder*, 633 F.3d 971, 978 (10th Cir. 2011) (quoting 8 C.F.R. § 1208.16(c)(2)).  "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1).  It "is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." § 1208.18(a)(2).  "In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from . . . [t]he intentional infliction or threatened infliction of severe physical pain or suffering [or] [t]he threat of imminent death." § 1208.18(a)(4).

For "severe pain or suffering" to warrant CAT protection, it must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." § 1208.18(a)(1).  "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." § 1208.18(a)(7).  "This standard does not require actual knowledge, or willful

8

acceptance by the government.  Rather, willful blindness suffices to prove

acquiescence." *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (citation and

internal quotation marks omitted).  However, evidence of police corruption or

inability to prevent torture does not compel a finding of acquiescence.  *See, e.g.*,

*Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (petitioner failed to show

acquiescence where the record showed the government had made unsuccessful efforts

to prevent potential torture); *see also Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192

(10th Cir. 2005) (evidence of government corruption and underfunding of police did

not compel a conclusion of government acquiescence).

In assessing the likelihood of torture, the factfinder must consider "all

evidence relevant to the possibility of future torture . . . including, but not limited

to . . . [e]vidence of past torture"; the applicant's ability to relocate "to a part of the

country of removal where he or she is not likely to be tortured"; "[e]vidence of gross,

flagrant or mass violations of human rights within the country of removal"; and

"[o]ther relevant information regarding conditions in the country of removal."

§ 1208.16(c)(3)(i)-(iv).

Although evidence of gross, flagrant or mass human rights violations is

relevant, *see* § 1208.16(c)(3)(iii), such evidence "does . . . not constitute sufficient

grounds for determining that a particular person would be in danger of being

subjected to torture upon his return to that country." *In re J-E-*, 23 I. & N. Dec. 291,

303 (B.I.A. 2002) (footnote omitted)), *overruled on other grounds by Azanor v.

Ashcroft*, 364 F.3d 1013 (9th Cir. 2004).  "Specific grounds must exist that indicate

the individual would be potentially at risk." *Id.* Thus, to meet the burden of proof, an applicant must demonstrate she is personally at risk of torture. *See id.*

## V. ANALYSIS

Petitioner frames the issue on appeal as "[w]hether the BIA and the IJ properly considered and addressed all evidence of record relevant to the possibility of whether [she] would be subjected to torture if returned to El Salvador." Pet'r's Opening Br. at 3. She maintains that "the BIA and the IJ failed to even reference highly probative evidence that supported [her] contention that there was more than one factor in her background which independently raised her risk of torture." *Id.* at 14. Specifically, Petitioner claims the agency overlooked that she "was a self-employed merchant and ostensibly a single parent because her spouse relocated to the United States," and "[c]ountry conditions evidence in the record showed that both local and transnational gangs committed acts of extortion and acts of violence against the business community and that gangs targeted merchants for extortion." *Id.* at 12.

The problem with this argument is that Petitioner did not raise it before the agency. At the merits hearing and in her administrative appeal, she consistently maintained that the Gang targeted her family solely because her husband had the financial wherewithal to pay a ransom—she did not argue that she was personally at risk of torture because she was a merchant. "[A]n alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010). "[P]resenting a *conclusion* or *request for relief* to the BIA isn't enough to exhaust every potential

10

*argument* for reaching that conclusion or winning that relief." *Id.* at 1238. Thus, Petitioner's failure to raise this new argument before the agency precludes her from raising it now.

Petitioner also maintains that the IJ failed to consider country conditions information regarding gang violence and the warning from her cousin Carlos that she should leave El Salvador. We disagree. The BIA found that the IJ "clearly stated that she was relying on country conditions information, and we agree that evidence of pervasive gang violence in El Salvador does not establish an individualized risk of torture in the future by a government actor." Admin. R. at 5. As the agency explained, "pervasive violence in a country generally is insufficient to demonstrate the [applicant] is more likely than not to be tortured upon returning there," *id.* (citing *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362 (10th Cir. 2019)). Moreover, the BIA found that

> [w]hile the [IJ] may not have specifically referenced [Petitioner's] testimony regarding statements made by [Carlos] who is a police officer, the [IJ] stated that all evidence had been considered in reaching her decision and we are not persuaded that [her] factual findings or legal conclusions are not based on the totality of the evidence.

Admin. R. at 5 (citing *Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) (an adjudicator "is not required to write an exegesis on every contention" (internal quotation marks omitted))). In any event, Carlos told her that filing a report and an ensuing police investigation might tip off the Gang that she was the complaining witness and cause the Gang to retaliate, not that filing a report would be futile because the police would refuse to investigate.

The agency's finding that Petitioner failed to establish that she would not likely be tortured upon her return to El Salvador with the acquiescence of Salvadoran officials is supported by reasonable, substantial, and probative evidence, and no reasonable adjudicator would be compelled to conclude otherwise.

## VI.  CONCLUSION

The petition for review is denied.

Entered for the Court


Joel M. Carson III
Circuit Judge